# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re : Dwayne R. Hagerty and Sally E. Hagerty<br>　　　　Debtors<br>&<br>Udren Law Offices, P.C.<br>　　　　Respondent | Bankruptcy Case No.: 17-21538<br>Chapter 13<br>Related to Document Nos.: 84 and 96<br>Hearing Date: December 5, 2018 |

## DECLARATION IN LIEU OF AFFIDAVIT OF DAVID NEEREN, ESQUIRE, FORMER ATTORNEY OF UDREN LAW OFFICES, P.C.

I, David Neeren, Esquire, hereby submit this Declaration in Lieu of Affidavit concerning this Honorable Court's Order dated November 8, 2018 [Doc 96] and declare the following:

1. I am an attorney licensed to practice law in good standing in the Commonwealth of Pennsylvania and the State of New Jersey, since being admitted to practice in 2006 and 2007, respectively.

2. In my approximate twelve (12) years practicing law, I have no knowledge of any disciplinary action or complaint against me by any client, attorney, opponent or any person whatsoever and have never been admonished by any tribunal in any jurisdiction in which I practice.

3. I am admitted to practice and in good standing in the United States District Courts for all three (3) districts in Pennsylvania and the District of New Jersey.

4. I have handled dozens of appeals in the Superior and Commonwealth Courts of Pennsylvania and the Superior Court of New Jersey – Appellate Division.

5. I have represented individuals and businesses in countless transactional matters and lawsuits throughout my legal career.

6. I cannot recall ever missing a deadline in my legal career and always endeavor to be diligent, courteous, and respectful.

7. I began working as an attorney at Udren Law Offices, P.C. ("Udren"), a law firm representing mortgagees and creditors, on March 18, 2013. In or around the fall of 2015, I was promoted to the position of Assistant Managing Attorney wherein, in addition to my role as an attorney appearing in court and drafting documents, I was tasked with, *inter alia*, managing client communications and assigning/overseeing tasks to firm attorneys.

8. I do not have any equity in Udren and never shared in any profits of Udren. Upon information and belief, the sole shareholder and principal of Udren has forever been Mark Udren, Esquire.

9. On or about April 17, 2017, I filed a Notice of Appearance and Request for Notice in the above-captioned matter.

10. Although I filed a Notice of Appearance, my former colleagues at Udren were assigned this case to handle on behalf of PNC Bank, N.A. for Udren.

11. My former colleagues reviewed the substantive bankruptcy issues and filed three (3) documents on behalf of PNC Bank, N.A. in the above-captioned matter.

12. On May 25, 2018, I suffered a serious and emergency medical injury, Cauda Equina Syndrome ("CES"), whereby I required emergency discectomy and laminectomy surgery performed by neurosurgeon, Dr. Guarav Jain, at Lankenau Hospital.

13. As a result of the CES, I was paralyzed from the mid-calves down, and lost all

nerve function in my bowels, bladder, hips and glutes. It was unknown and unclear whether and to what extent the nerve function would return to the affected areas.

14. I spent approximately five (5) days in Lankenau Hospital before being transferred to Magee Rehabilitation Hospital, an acute, in-patient rehabilitation hospital located at 15th and Race Streets in Philadelphia, PA. I rehabbed as an inpatient at Magee Rehabilitation Hospital for approximately five (5) weeks from May 30, 2018 until July 1, 2018, where I was discharged to live at home with modifications and the care of occupational and physical therapists.

15. During this difficult time for me in the late spring and summer of 2018, Udren was extremely generous and understanding of my medical situation and allowed me to remain an employee of Udren and "work" from home while I continued rehabbing from my injuries.

16. I live in the western suburbs of Philadelphia, PA and Udren's office was located in Cherry Hill, NJ, an approximate fifty (50) minute commute by car.

17. I was unable to operate a motor vehicle during the summer of 2018 and the managing attorney of Udren, would transport me to the office in the occasional event my presence was required.

18. I became aware of the closing of Udren at the same time as the rest of the staff, towards the end of July 2018, wherein we were all notified that the firm intended to close on or around August 31, 2018.

19. During August 2018, I spent much of my physically available time ensuring that every single client and every single file were directed to another law firm or lawyer.

20. It was my understanding that all of the foreclosure and bankruptcy files of PNC Bank, N.A., including the above-captioned matter, were transferred to KML Law Group, LLC

("KML") at or around the beginning of August 2018.

21.     Generally speaking, our mortgagee clients will require the transferee law firm [KML in this case] to immediately review all files as "transfer files" and prepare any and all required substitutions of counsel in any matter which requires further action.

22.     It was my understanding that subsequent to the closing of the law firm, on or around August 31, 2018, there would be limited staff at Udren to continue to monitor filings and communicate with clients.

23.     I am extremely fortunate and pleased to report that my physicians and therapists all agree that I have made a "remarkable" recovery and am able to walk and operate a motor vehicle without modifications.

24.     I began employment with a new law firm, RAS Citron, LLC, on September 4, 2018 as a Litigation Attorney.

25.     I did not bring any clients or cases with me when I left Udren to work for RAS Citron, LLC.

26.     My responsibilities at RAS Citron, LLC do not include handling or appearing in any bankruptcy matter in any jurisdiction including the Western District of Pennsylvania.

27.     On October 11, 2018, I became aware of the October 10, 2018 Order to Show Cause requiring Udren to, *inter alia*, personally appear at a November 7, 2018 hearing.

28.     I immediately contacted the managing attorney's at KML and was at first erroneously advised that PNC Bank's bankruptcy matters were transferred to Phelan Hallinan Diamond and Jones P.C.

29.     Thereafter, also on October 11, 2018 I immediately contacted the

managing/bankruptcy counsel at the Phelan firm and was advised that it was not their understanding that they received PNC Bank's bankruptcy files.

30. It was thereafter confirmed that KML was handling this matter on behalf of PNC Bank, N.A. and would be filing a response to the October 10, 2018 Order to Show Cause and appear at the November 7, 2018 hearing.

31. In or around the end of October 2018, I confirmed on the docket that KML did enter its appearance on behalf of PNC and filed a response that I believe accurately set forth the status of Udren as closed.

32. Since the October 10, 2018 Order was addressed to Udren, I was no longer employed by Udren, I did not represent Udren in this matter, I believed that Udren ceased to exist as a law firm at the time, and ensured that PNC Bank, N.A. had able counsel entered of record in this matter, I did not believe that any personal response or appearance was appropriate or requested at the November 7, 2018 hearing.

33. I have communicated with Mark Udren, Esquire and, upon information and belief, Udren's counsel, Daniel Bernheim, Esquire, concerning the October 10, 2018 Order to Show Cause and the November 8, 2018 Order to Show Cause and am under the impression that Udren intends to comply with the requirements of the Order.

34. I have not been on an airplane or driven a motor vehicle for more than approximately one (1) hour since I was injured on May 25, 2018.

35. Subsequent to the filing of this Declaration, I intend to contact chambers to seek this Honorable Court's guidance concerning:

- Whether my personal appearance at the December 5, 2018 hearing is required, or

in the alternative, whether I may be permitted to appear by telephone and retain an attorney to represent my interests at the aforementioned hearing;

- Whether the Court will accept my Withdrawal of Appearance since new counsel has appeared on behalf of PNC Bank, N.A. and to avoid my new firm, or myself, incurring a motion filing fee to withdraw as counsel; and,

- What additional steps, if any, the Court would like me to take to ensure the interests of creditors for whom I entered my appearance as an attorney for the prior foreclosure/bankruptcy law firm are protected in this unique situation[1].

I declare under penalty of perjury that all of the foregoing is true and correct.

Date: November 21, 2018                         By: /s/ David Neeren
                                                David Neeren, Esquire
                                                PA ID No. 204252
                                                RAS Citron, LLC
                                                425 Commerce Drive, Suite 150
                                                Fort Washington, PA 08054
                                                T: (855) 225-6906 ext. 304
                                                F: (866) 381-9549
                                                dneeren@rasnj.com

---

[1] I understand that the Court may be amenable to an Omnibus Motion to Withdraw in these situations, however, my concern is that if I seek to unilaterally withdraw from all cases, I will not be contacted by the Court or counsel concerning an issue or matter before the Court and be able to make reasonable efforts to ensure that my former client is ably represented by new counsel. Here, I was able to immediately investigate the proper representation and communicate with PNC Bank's counsel to ensure that the creditor was represented in this only because I was contacted as counsel of record.